**Irva J. SIVILS, Respondent,**

v.

**Wilbur S. SIVILS, Appellant.**

**No. WD34116.**

Missouri Court of Appeals,
Western District.

Aug. 2, 1983.

Motion For Rehearing and/or Transfer to Supreme Court Overruled and Denied Sept. 28, 1983.

Application to Transfer Denied Nov. 22, 1983.

Leo P. Dreyer, Shook, Hardy & Bacon, Kansas City, for appellant.

H.H. McNabb, Jr., McNabb & Pursley, Butler, for respondent.

Before WASSERSTROM, P.J., and KENNEDY and NUGENT, JJ.

WASSERSTROM, Presiding Judge.

Plaintiff seeks to set aside her deed which conveyed a farm to defendant. The trial court after a nonjury hearing granted the relief sought on the ground of misrepresentation and lack of consideration. We affirm.

At the time of trial plaintiff was a lady 82 years of age who had been a widow for three years. She has one son, the defendant, and three daughters.

Defendant's principal occupation is driving an over the road truck, but he also does some farming work and takes care of horses and cattle. From 1967 to 1979, he was in a cattle partnership with his parents, pursuant to the terms of which the father furnished the cattle herd and one-half of the feed; defendant furnished the other half of the feed and all of the labor. The profits were to be divided equally. Defendant testified that each year during the term of the partnership he paid taxes on one-half of the proceeds from the sale of calves, but that he turned over his share of the proceeds to his parents. He says that the money so turned over was in the nature of a loan which the parents were to repay with interest. Defendant introduced in evidence a written document, Exhibit 3, which was signed by the parents and which states: "This is to verify that all monies from the sale of cattle sold in Wilbur S. Sivils name from the 1st day of January 1967 thru January 1979, according to agreement entered into on the 1st day of January 1967 between Clyde O. Sivils, Irva J. Sivils and Wilbur S. Sivils, was returned to Clyde O. Sivils and Irva J. Sivils at the time of said sale." Plaintiff denied having received plaintiff's share of the proceeds of cattle sales, and she denied in her testimony owing any money to defendant.

Part of the property owned by plaintiff after her husband's death was a 150 acre

farm valued at $150,000, and which is referred to in the evidence as "the home place." After her husband's death, plaintiff executed a deed to this home place to her four children, but reserved the right to use it and the right to convey it during her lifetime. Defendant testified that plaintiff had told him that she wanted him to have the home place as his share of the family inheritance. Plaintiff, on the other hand, testified that while she desired for defendant to have the home place, her thought was that he would buy out his sisters' interests.

About a year prior to the time of trial, plaintiff went to live in a rest home in Grandview. The cost for that care was approximately $1,000 a month. Plaintiff apparently exhausted the amount of cash available to her, and it became necessary to sell some piece of property to cover her expenses. The evidence indicates that an argument developed between defendant and the sisters as to what property should be sold. The sisters wanted to sell the home place, whereas defendant thought that the home place should be retained and one of the other farms sold. Defendant testified that he discussed this matter with his mother, at which time plaintiff said she did not want to sell the home place. Defendant then determined that the way to accomplish this purpose was for her to deed the farm to him. He testified that the deed was prepared at plaintiff's insistence.

On September 19, 1981, defendant presented a deed on the farm to plaintiff for signature. Plaintiff's eyesight was so poor that she could not read the document, and she testified that defendant told her that the document was a lease on pasturage for his horses. Plaintiff further testified that she signed the deed in reliance upon that representation.

Defendant on the other hand, testified that he explained to his mother that the deed was a conveyance of the home place to him. Defendant's testimony in this regard is supported by that of the notary public and of the notary public's husband. Both of them testified that the notary asked plaintiff whether she understood that she was signing a deed to her property and plaintiff responded affirmatively.

Defendant further testified that when his mother signed the deed he told her that the conveyance would cancel the principal and interest which she owed him for the cattle money. He says he also promised her at that time that in consideration of the deed he would take care of her support for the balance of her lifetime.

Shortly after the conveyance of September 19, 1981, further conversations took place between plaintiff and members of her family, which resulted in the filing of this lawsuit on October 5, 1981. Defendant testified that soon thereafter plaintiff told him that the sisters were pressing her to obtain a reconveyance from defendant of the home place and that if he would do so thereby enabling her to give it to the girls, that would end all of the argument. Defendant refused, saying: "This is what we agreed on and I think that this is the way it should stay."

In his first point on appeal, defendant contends that the court's findings of fraud and lack of consideration are contrary to the weight of the evidence summarized above. In his second point, he contends that the court erred in denying his after trial motion for leave to amend his pleadings so as to assert a counterclaim for the money which he alleges to be due from plaintiff to him by reason of cattle sales during the period 1967 to 1979.

I.

## WEIGHT OF THE EVIDENCE

Defendant points out that the burden was upon plaintiff to prove her allegations of fraud and lack of consideration by clear, cogent and convincing evidence. He further points out that plaintiff's only evidence was her own testimony. He argues that her testimony cannot be accepted as sufficient evidence, and should not be believed in preference to his testimony and that of the notary and her husband, because the

trial court itself expressed question as to plaintiff's competence.

In the latter regard, defendant relies on the following formal finding of fact made by the trial court as part of the judgment: "10. That in view of the infirmities of Plaintiff it would be in her best interests that steps be taken toward the appointment of a guardian to manage her affairs." That finding was amplified by the following remarks made by the trial court at the conclusion of the hearing:

"The court would like to suggest to all the children, since there apparently is some dissension and maybe some questions as to how the property should be handled and used for her care, that they should all seriously consider a guardianship, and it is obvious to the Court, to me, from at least this point on that, with all due respect to Mrs. Sivils, she would not be competent to sign a deed in the future and a guardianship might be considered to handle her affairs. She is a very fine lady. She is 82 years old. She cannot see. She had problems remembering what has occurred. I think that would be the appropriate protection for her and for the children, but the Court does find the deed should be set aside."

■ It is quite obvious that the trial court was concerned, and justifiably so, about the family dispute which had erupted between the members of this family and the pressure which the mother was suffering at the hands of her four children, which came at a time of her gradual deterioration. Nevertheless, despite the handicaps under which she was already laboring at the time of the trial, the court found her competent and credible. In appropriate circumstances, testimony may be accepted from a person even after that person has been adjudicated mentally incompetent. Whether such evidence should be accepted is a matter for determination by the trial court and the extent of credit to be given to the witness is a matter for determination by the fact finder. *State v. Herring,* 268 Mo. 514, 188 S.W. 169 (1916); *Beil v. Gaertner,* 355 Mo. 617, 197 S.W.2d 611 (1946); *Dennis v. Sears,*

*Roebuck & Co.,* 461 S.W.2d 325 (Mo.App. 1970).

■ Our independent review of plaintiff's testimony confirms the trial court as to her competence and credibility. She answered question responsively and intelligently. When she did not hear a question, she asked for repetition. When the lawyers lapsed into legalese, she demanded clarification. The trial court's election to believe her testimony and to reject that offered on behalf of defendant is entitled to deference. Rule 73.01(c)(2); *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976).

## II.

### THE REQUESTED COUNTERCLAIM

After the evidence was closed and the court had entered judgment, defendant asked leave to reopen the case and for permission to file a counterclaim. The purpose of the counterclaim would be to recover the money allegedly lent by defendant to his parents by way of his share of the cattle partnership profits. This sum of money is the same one as to which defendant had testified and which he contended was part of the consideration for the deed to the farm.

The trial court had already considered that testimony given by defendant and had already considered Exhibit 3 which defendant had tendered in support of his testimony. The court had rejected defendant's version of those facts as reflected by the following findings:

"4. That defendant's Exhibit # 3 was not a written confirmation of indebtedness of Plaintiff to Defendant.

5. That there was no consideration for the conveyance in question."

■ If this sum of money was not a real indebtedness between the parties so as to constitute consideration for the deed, likewise it was not a real indebtedness so as to support recovery by defendant under a counterclaim. There was therefore no reason to reopen the case in order to reconsider this matter which had already been decided. Defendant admits that the court's ruling in

this regard was discretionary. That discretion was not here abused.

Affirmed.

All concur.